# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
|  | * |  |
| **UNITED STATES OF AMERICA** | * |  |
| **v.** | * | **CRIMINAL NO.  JKB-13-0012** |
| **KEREM DAYI**, *et al.* | * |  |
| **Defendants** | * |  |

\* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
|  | * |  |
| **UNITED STATES OF AMERICA** | * |  |
| **v.** | * | **CRIMINAL NO.  JKB-13-0304** |
| **ALEXANDROS LINEBERRY** | * |  |
| **Defendant** | * |  |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

The Court is preparing to sentence twenty-two defendants in these related cases.[1] The facts of these cases are set out in detail in the factual statements in support of the guilty pleas entered by most defendants, as well as in the record made during the jury trial of three defendants who pled "not guilty" but were convicted nonetheless.[2] Broadly, these cases involve a large-scale, interstate conspiracy to distribute marijuana and, with regard to certain defendants, a conspiracy to launder the proceeds.

---

[1] Kerem Dayi, Robert R. Glickman, Scott R. Segal (sentenced 10/28/2013, entry of judgment pending), Gabriel Gonzalez, Gokhan Bergal, Steven N. Madden (sentenced 10/28/2013, entry of judgment pending), Martin Dandy, Patrick Russo, Ryan B. Wheeler, Anthony C. Santoiemma, Anthony E. O. Seen, Frederick B. Thomas, Sae Hyong Hwang, Charles M. Thomson, Jeffrey D. Small, Jeremy Anderson, Kenneth Eng, Brianna Wright, Jason Gates, Anes Hadziefejzovic, Neil D. Wylie, Alexandros Lineberry.

[2] Gokhan Bergal, Charles M. Thomson, and Anes Hadziefejzovic proceeded to trial and were found guilty.

During a hearing held on Friday, October 25, 2013, the Court invited all parties to present arguments on how changes in state law and federal enforcement policy regarding marijuana might be relevant to the Court's consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). In light of these changes in state law and federal enforcement policy, and in light of the Court's duty to consider (1) the need for any sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A), and (2) the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,"§ 3553(a)(6), the Court will grant each defendant a downward variance of two levels[3] from the sentence otherwise appropriate in his or her case.

I. UNDER *KIMBROUGH*, THE COURT MAY CONSIDER CHANGES IN STATE LAW AND FEDERAL ENFORCEMENT POLICY REGARDING MARIJUANA AS IT WEIGHS § 3553(a) SENTENCING FACTORS

In *Kimbrough v. United States*, 552 U.S. 85 (2007), the Supreme Court recognized "district courts' authority to vary from the crack cocaine Guidelines based on *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears v. United States*, 555 U.S. 261, 264 (2009) (citing *Kimbrough*, 552 U.S. 85); *see also United States v. Posey*, 294 F. App'x 765, 770 (4th Cir. 2008) ("[In *Kimbrough*,] the Supreme Court held that a district court may impose a variance sentence on the basis that, in a given case, the Guidelines range fails to properly reflect the § 3553 factors.").

The *Kimbrough* Court recognized that:

[A] district court's decision to vary from the advisory guidelines may attract greatest respect when the sentencing judge finds a particular case "outside the

---

[3] "Levels" here refers to offense levels under the United States Sentencing Guidelines ("Guidelines"), promulgated pursuant to 28 U.S.C. § 994(a).

2

'heartland' to which the Commission intends individual Guidelines to apply." On the other hand, while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range "fails properly to reflect § 3553 (a) considerations" even in a mine-run case.

552 U.S. at 109 (quoting *Rita v. United States*, 551 U.S. 337, 351 (2007)) (internal citations omitted). However, the Court concluded that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Id.*

In reaching this conclusion, the Court pointed to the fact that in formulating Guidelines ranges for crack cocaine, the United States Sentencing Commission (the "Commission") relied on the mandatory minimum sentences set in the 1986 Anti-Drug Abuse Act. *Id.* at 96-97, 109. This approach differs from the Commission's usual method of deriving Guidelines from "empirical data and national experience." *Id.* at 109 (quoting *United States. v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). As a result, the Court found that the crack cocaine Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role." *Id.*

In the cases at bar, the Court is faced with applying the Guidelines for marijuana-related offenses rather than crack cocaine. However, just as with crack cocaine Guidelines, in developing the marijuana Guidelines, the Commission did not use its usual "empirical approach based on data about past sentencing practices, including 10,000 presentence investigation reports." *Id.* at 96. Rather, as with all "Guidelines sentences for drug-trafficking offenses," the Commission relied on the "1986 Act's weight-driven scheme." *Id.* Therefore, here, just as in *Kimbrough*, the "Guidelines do not exemplify the Commission's exercise of its characteristic institutional role." *Id.* at 109.

Further, the Court takes notice of a recent news release in which the Commission announced that it has "set out as an important new priority reviewing the sentencing guidelines applicable to drug offenses, including consideration of changing the guideline levels based on drug quantities." News Release, U.S. Sentencing Commission, U.S. Sentencing Commission Selects Policy Priorities for 2013-2014 Guidelines Amendment Cycle (Aug. 15, 2013). Although this statement does not perfectly mirror the "consistent and emphatic position the Commission took on the crack/powder disparity," it is nonetheless an indication that the Guidelines may be at odds with § 3553(a). *Kimbrough*, 552 U.S. at 111. Therefore, under *Kimbrough*, the Court finds that it appropriately may consider recent changes in federal marijuana enforcement policy, as well as the changes in state law that have apparently motivated the change in federal enforcement policy, as it follows § 3553(a)'s overarching instruction to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id.* at 101 (quoting § 3553(a)).

## II.    ALTHOUGH THE GUIDELINES FOR MARIJUANA-RELATED OFFENSES HAVE REMAINED THE SAME SINCE 1987, STATE LAW AND FEDERAL ENFORCEMENT POLICY HAVE CHANGED SIGNIFICANTLY

The Guidelines for marijuana have remained unchanged since they were originally promulgated in 1987.[4] However, since then, state-level marijuana laws have evolved significantly. As Deputy Attorney General Cole testified before the Senate Committee on the Judiciary, "[f]or many years, all 50 states . . . enacted uniform drug control laws or similar provisions that mirrored the [Controlled Substances Act ("CSA")] with respect to their treatment of marijuana and made the possession, cultivation, and distribution of marijuana a state criminal

_____

[4] The Drug Quantity Table in the 1987 Guidelines Manual set a base offense level of 32 for an offense involving 1,000 to 2,999 kilograms of marijuana, a base offense level of 28 for 400-699 kilograms of marijuana, and a base offense level of 26 for 100-399 kilograms of marijuana. U.S. Sentencing Commission Guidelines Manual §2D1.1(c) (1987). The Drug Quantity Table in the 2012 Guidelines Manual does the same. U.S. Sentencing Commission Guidelines Manual §2D1.1(c) (2012).

offense." *Conflicts Between State and Federal Marijuana Laws: Hearing Before the S. Comm. On the Judiciary*, 113th Cong. (2013) (statement of James M. Cole, Deputy Att'y Gen. of the United States) ("*Cole Statement*"). However, Mr. Cole continued, "[s]tarting with California in 1996, several states have authorized the cultivation, distribution, possession, and use of marijuana for medical purposes, under state law. Today, twenty-one states and the District of Columbia [have] legalize[d] marijuana use for medical purposes under state law, including six states that enacted medical marijuana legislation in 2013." *Id.* If one adds to these states those that have decriminalized the possession of small quantities of marijuana for personal use, one arrives at a total of twenty-five states and the District of Columbia that have liberalized their marijuana laws. (Brief for Defendant Sae Hwang, ECF No. 635.) Among these states, Mr. Cole rightly highlighted Colorado and Washington, which, in November 2012, "passed ballot initiatives that . . . provide for the regulation of marijuana production, processing, and sale for recreational purposes." *Cole Statement* at 2; Colo. Const. art. XVIII, § 16; Wash. Rev. Code Ann. §§ 69.50.101, *et seq.* (West 2013).

This evolution in the treatment of marijuana under state criminal law is certainly relevant to the Court's analysis. It reflects a change in the way the citizens of various states perceive the dangerousness of marijuana. However, most relevant to this Court's consideration of the § 3553(a) factors are the recent changes in the Department of Justice's enforcement of federal marijuana laws in response to legislative action by the states. In 2009, then-Deputy Attorney General Ogden issued a memorandum announcing a policy of non-enforcement of federal marijuana laws with regard to "individuals with cancer or other serious illnesses who use marijuana as part of a recommended treatment regimen . . . [and] caregivers . . . who provide such individuals with marijuana." Memorandum from David W. Ogden, Deputy Att'y Gen. of

the United States, to selected United States Attorneys regarding Investigations and Prosecutions in States Authorizing the Medical Use of Marijuana (Oct. 19, 2009) ("*Ogden Memorandum*"). However, Mr. Ogden explicitly noted that the "prosecution of commercial enterprises that unlawfully market and sell marijuana for profit continues to be an enforcement priority of the Department." *Id.*

In 2011, Deputy Attorney General Cole issued a clarifying memorandum in light of "an increase in the scope of commercial cultivation, sale, distribution and use of marijuana for purported medical purposes . . . [as a result of state legislation] to authorize multiple large-scale, privately-operated industrial marijuana cultivation centers." Memorandum from James M. Cole, Deputy Att'y Gen. of the United States, to United States Attorneys regarding Guidance regarding the Ogden Memo in Jurisdictions Seeking to Authorize Marijuana for Medical Use (June 29, 2011) ("*2011 Cole Memorandum*"). This memorandum explicitly reiterated that the Justice Department's policy of non-enforcement with regard to the seriously ill and their caregivers did not apply to those "in the business of cultivating, selling or distributing marijuana," "even where those activities purport to comply with state law." *Id.*

In 2013, however, in the wake of the successful ballot initiatives in Colorado and Washington, the Justice Department extended its policy of non-enforcement to include even "large-scale, for-profit commercial enterprises" involved in the "cultivation, distribution, [and] sale" of marijuana. Memorandum from James M. Cole, Deputy Att'y Gen. of the United States, to United States Attorneys regarding Guidance regarding Marijuana Enforcement (August 29, 2013) ("*2013 Cole Memorandum*"). Specifically, Mr. Cole noted that "the existence of a strong and effective state regulatory system, and an operation's compliance with such a system, may

allay the threat that an operation's size poses to federal enforcement interests." [5] *Id.* Thus, under the Justice Department's current enforcement guidelines, marijuana traffickers—even large-scale, for-profit commercial enterprises—will not be prosecuted provided they comply with state laws and regulations and do not fall awry of the eight federal enforcement interests. *Id; see also Cole Statement* ("Outside of these enforcement priorities, however, the Department will continue to rely on state and local authorities to address marijuana activity through enforcement of their own drug laws.").

In his September 10, 2013 testimony before the Senate Committee on the Judiciary, Mr. Cole also indicated that the Justice Department was working with banking regulators to allow marijuana trafficking operations that are in compliance with state laws and regulations to deposit their proceeds in, and otherwise transact business with, banks. *Conflicts Between State and Federal Marijuana Laws: Hearing Before the S. Comm. On the Judiciary*, 113th Cong. (2013) (oral testimony of James M. Cole, Deputy Att'y Gen. of the United States). Mr. Cole's comments came in response to questions from Senators Leahy and Whitehouse who expressed worries about the application of federal money-laundering statutes to these regulated enterprises and any banks with which they might interact. *Id.*

These developments reflect a significant change since 1987, when the Guidelines were promulgated, in the way marijuana is treated both under state law and, more significantly, by federal prosecutors. However, while the Court takes note of this evolving landscape, it

---

[5] The eight "enforcement priorities that are particularly important to the federal government [are]: (1) Preventing the distribution of marijuana to minors; (2) Preventing revenue from the sale of marijuana from going to criminal enterprises, gangs, and cartels; (3) Preventing the diversion of marijuana from states where it is legal under state law in some form to other states; (4) Preventing state-authorized marijuana activity from being used as a cover or pretext for the trafficking of other illegal drugs or other illegal activity; (5) Preventing violence and the use of firearms in the cultivation and distribution of marijuana; (6) Preventing drugged driving and the exacerbation of other adverse public health consequences associated with marijuana use; (7) Preventing the growing of marijuana on public lands and the attendant public safety and environmental dangers posed by marijuana production on public lands; and (8) Preventing marijuana possession or use on federal property." *2013 Cole Memorandum.*

recognizes that marijuana remains illegal under federal law. Years ago, Congress placed marijuana in Schedule I of the CSA alongside other drugs or substances it deems to have (1) "a high potential for abuse;" (2) "no currently accepted medical use in treatment in the United States;" and (3) "a lack of accepted safety for use under medical supervision." 21 U.S.C. § 812(b)(1). And, while there is no evidence that Congress has ever thoroughly reevaluated the appropriateness of its Schedule I designation for marijuana, it is not this Court's intention—nor is it this Court's place—to second-guess Congress on drug scheduling. Further, this Court does not call into question the legitimacy of the government's decision to prosecute the defendants in these cases. The defendants pled guilty to or were found guilty of violating federal law. In addition, their illegal enterprise was not regulated or licensed under state law, and its activities fell awry of several federal enforcement priorities. Rather, the noted evolution in the legal landscape is relevant only to the Court's evaluation of the sentencing factors set forth in § 3553(a).

**III. BASED ON ITS CONSIDERATION OF DEVELOPMENTS IN STATE LAW AND FEDERAL ENFORCEMENT POLICY REGARDING MARIJUANA IN LIGHT OF THE § 3553(a) SENTENCING FACTORS, THE COURT WILL GRANT EACH DEFENDANT A TWO-LEVEL DOWNWARD VARIANCE**

In sentencing a criminal defendant, this Court is required to consider the factors listed in § 3553(a). Indeed, as the Supreme Court and the Fourth Circuit have held:

> "Federal sentencing law requires the district judge in every case to impose 'a sentence sufficient, but not greater than necessary, to comply with' the purposes of federal sentencing, in light of the Guidelines and other § 3553(a) factors." Freeman v. United States, —— U.S. ——, 131 S.Ct. 2685, 2692, 180 L.Ed.2d 519 (2011) (quoting 18 U.S.C. § 3553(a)). Under the current sentencing regime, "district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in § 3553(a), subject to appellate review for 'reasonableness.' " Pepper v. United States, —— U.S. ——, 131 S.Ct. 1229, 1241, 179 L.Ed.2d 196 (2011).

*United States v. Hargrove*, 701 F.3d 156, 160 (4th Cir. 2012). The evolving landscape of state law and federal enforcement policy regarding marijuana is particularly relevant to two of these factors, namely (1) the need for any sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A), and (2) the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,"§ 3553(a)(6). The Court considers each of these in turn.

### a. Seriousness

The seriousness of violations of federal marijuana laws has been undercut by (1) recent state enactments decriminalizing, legalizing, and regulating not only the possession of marijuana but also its cultivation, distribution, and sale, and (2) the federal government's expanding policy of non-enforcement. Indeed, these state enactments reflect the desire of several states to "try something new" in marijuana policy by adopting an approach focused on regulation instead of prohibition. *Conflicts Between State and Federal Marijuana Laws: Hearing Before the S. Comm. On the Judiciary*, 113th Cong. (2013) (statement of John Urquhart, Sheriff, King County, WA). Further, the Justice Department's enforcement policy suggests that the executive branch of the federal government condones this new approach. The result is an undeniable signal that violating federal marijuana laws is not as serious an offense as it once was.

Two hypothetical examples, discussed during the October 25 hearing, illustrate this fact. First, if a state were to legalize and regulate heroin—another Schedule I controlled substance— the Justice Department almost certainly would not respond with a policy of non-enforcement. This suggests that, in the eyes of the executive branch, marijuana-related offenses are no longer

as serious as offenses involving other drugs.[6] Second, even if the Justice Department were to benefit from unlimited prosecutorial resources, it is unlikely it would reverse its policy of deferring to states that have chosen to legalize and regulate marijuana. This reflects the Justice Department's willingness to allow state governments to experiment with an approach to marijuana based on regulation rather than prohibition.

This shift from prohibition to regulation moves marijuana-related offenses further from traditional drug trafficking offenses and closer to black marketeering in terms of severity. Even the government, in its brief, draws an analogy between the present cases and a hypothetical case involving untaxed cigarettes. (ECF No. 643 at 8.) Illegally distributing cigarettes, alcohol or other regulated goods is a crime—one that this Court is certainly familiar with. However, it is simply not as serious an offense as trafficking in illegal drugs.

The Court's role is not to question, criticize, or laud the Justice Department's new enforcement priorities or the recent enactments of state voters and legislators. These policy choices reflect an on-going effort to address a complex, difficult, and highly controversial issue.[7] Rather, the Court's role is simply to take note of these developments and consider them as part of its assessment of the seriousness of these offenses. Ultimately, the Court finds that, in 2013, strict Guidelines sentences would overstate the seriousness of the underlying offenses and

---

[6] Of course, the Court recognizes that the Guidelines implicitly recognize heroin as a more dangerous drug than marijuana—an offense level of 32 requires at least 1,000 kilograms of marijuana but only 1 kilogram of heroin. U.S. Sentencing Commission Guidelines Manual §2D1.1(c) (2012). However, the fact remains that the Justice Department is willing to condone a state policy of regulating marijuana but almost certainly would not do the same for heroin.

[7] The Court takes note of well-founded concerns about the widespread use of marijuana. Recent studies apparently show that marijuana use has an adverse impact on learning and memory, particularly among individuals who begin using the drug as teenagers. National Institute on Drug Abuse, *DrugFacts: Marijuana,* Dec. 2012, *http://www.drugabuse.gov/publications/drugfacts/marijuana* (last accessed Nov. 1, 2013) ("Research from different areas is converging on the fact that regular marijuana use by young people can have long-lasting negative impact on the structure and function of their brains."). The Court further notes that the strands of marijuana being cultivated today apparently have four times the amount of THC as those cultivated in the 1980s. *Id.* ("The amount of THC in marijuana samples confiscated by police has been increasing steadily over the past few decades. In 2012, THC concentrations in marijuana averaged nearly 15 percent, compared to around 4 percent in the 1980s.").

therefore fail "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A).

### b. Equal Justice

The Court also finds that Guidelines sentences in these cases would fail to address the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). The Court construes this factor broadly, interpreting it as a command to ensure that sentences comport with the notion of equal justice under the law. The Justice Department has decided it will not prosecute certain marijuana traffickers, including large-scale commercial distributors who, in compliance with state laws and regulations, establish retail outlets that cater to recreational marijuana users in Colorado and Washington. Although the illegal enterprise in these cases is not identical to these commercial distributors—i.e., it did not comply with the laws or regulations of any state and implicated several federal enforcement priorities—it nonetheless bears some similarity to those marijuana distribution operations in Colorado and Washington that will not be subject to federal prosecution. The Court therefore finds it should use its sentencing discretion to dampen the disparate effects of prosecutorial priorities. As a result, the Court finds this factor too justifies a downward variance from the sentence the Guidelines would otherwise recommend.

## IV.    CONCLUSION

Of course, these two factors are not the only ones the Court must consider under § 3553(a). Others, particularly "the nature and circumstances of the offense," § 3553(a)(1), and "the need for the sentence imposed to afford adequate deterrence to criminal conduct" § 3553(2)(B), militate more strongly in favor of a Guidelines sentence. Indeed, the conspiracy at issue in these cases was a large, elaborate, and profitable illegal operation involving well in

excess of 1,000 kilograms of marijuana. The Court therefore believes that a two-level variance from the Guidelines, which would reduce each defendant's sentence by roughly 20 to 25%, is appropriate. Such a variance reflects national trends in the enforcement of marijuana-related offenses, while recognizing the undeniable illegality of defendants' conduct. As it determines the sentence of each defendant in these cases, the Court will adopt this analysis, and accordingly it will grant each defendant the benefit of a two-level downward variance.

DATED this   1st   day of November, 2013.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge